**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.A.**

**No. 24-489** (Randolph County CC-42-2023-JA-45)

## MEMORANDUM DECISION

Petitioner Mother C.A.[1] appeals the Circuit Court of Randolph County's August 5, 2024, order terminating her parental rights to D.A., arguing that the circuit court erred in terminating her parental rights without first granting her an improvement period.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2023, the DHS filed a petition alleging that the petitioner was behaving erratically and, at one point, could not locate her child for an extended period. Child Protective Services ("CPS") sought the assistance of law enforcement to locate the petitioner and the child. Ultimately, the petitioner agreed to meet a CPS worker in a public park, where she continued to act erratically and repeatedly instructed law enforcement to search her person and vehicle. The petitioner acknowledged that she lacked housing at the time, having stayed with various acquaintances for short periods of time and demonstrated an inability to manage the $3,200 in monthly benefits she received in order to provide the child with appropriate housing. Although the petitioner arrived at the park with the child, she indicated that while staying in an unknown residence, "people in the home took her son [while the petitioner slept] and she did not know where he was for two days." CPS attempted to implement a safety plan to assist the petitioner with the child, but she refused to

---

[1] The petitioner appears by counsel Timothy H. Prentice. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Melissa T. Roman appears as the child's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

cooperate. The petition further alleged that the petitioner appeared to be under the influence of drugs and refused to submit for a drug screen.

Following the petition's filing, the petitioner tested positive for marijuana and methamphetamine over the next several months. At an adjudicatory hearing in October 2023, the petitioner admitted to the allegations in the petition. The court adjudicated her of abusing and neglecting the child and directed that she could visit with the child if she produced clean drug screens over the next week. Thereafter, the petitioner filed a motion for a post-adjudicatory improvement period, after which the circuit court granted a continuance of the dispositional hearing upon the petitioner's request for forty-five days to show compliance with random drug screens. In awarding this continuance, the court was explicit that this was "to allow the [petitioner] to show commitment to these proceedings and that she would likely fully participate in an improvement period," given that she had not been consistent with ordered services to this point. Around this time, the petitioner participated in a parental fitness evaluation which resulted in a guarded prognosis for improvement, in part, because of the petitioner minimizing her substance abuse.

In May 2024, the guardian filed a motion to terminate the petitioner's parental rights because she "continue[d] to test positive for methamphetamine nearly a year after" the proceedings commenced and despite participation in a medication-assisted treatment program. The guardian further alleged that the petitioner missed numerous screens and denied having a drug problem. In a case plan filed ahead of disposition, the DHS indicated that it did not object to an improvement period but noted concerns about the petitioner's continued substance abuse and her inconsistent participation in services.

The court held a final dispositional hearing in July 2024, during which the petitioner, in response to a question about what abusive or neglectful conduct she subjected the child to, responded, "I have not done anything." The petitioner also admitted that she abused methamphetamine within two weeks of the dispositional hearing. Based on the evidence, the court found that the petitioner "denie[d] understanding why her child was removed" despite her many positive drug screens and stressed that she was assessed and deemed ineligible for participation in Family Drug Treatment Court because "she did not recognize a substance abuse problem during assessment." The court further noted the petitioner's noncompliance with ordered drug screens and her denial of drug use when she tested positive. Based on the petitioner's refusal to acknowledge her substance abuse issue, the court concluded that she was not likely to fully participate in a post-adjudicatory improvement period and denied her motion. Further, the court found that there was no reasonable likelihood that she could substantially correct the conditions in the near future and that termination of her parental rights was necessary for the child's welfare, given the need for stability and continuity of care and caretakers. Accordingly, the court terminated the petitioner's parental rights to the child.[3] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re*

---

[3] The father is deceased, and the permanency plan for the child is adoption in the current placement.

2

*Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. In order to obtain a post-adjudicatory improvement period, the parent must "demonstrate[], by clear and convincing evidence, that [he or she is] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). Further, we have stressed that "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As set forth above, the court was presented with ample evidence that the petitioner refused to acknowledge her substance abuse problem despite repeatedly testing positive throughout the proceedings and failing to drug screen as ordered. As such, we conclude that the court did not abuse its discretion in denying the petitioner's motion because she was unlikely to fully comply or improve. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (granting circuit courts discretion to deny a motion for an improvement period when no improvement is likely).

Further, we conclude that the court did not err in terminating the petitioner's parental rights. The same evidence set forth above concerning the petitioner's refusal to acknowledge the conditions at issue supports the circuit court's findings that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."). As we have explained, "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Additionally, the court found, upon ample evidence, that termination was necessary for the child's welfare. Circuit courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6). Accordingly, we conclude that termination was not in error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 5, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: March 19, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

3